UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

PRECISION FRANCHISING LLC
748 Miller Drive, S.E.
Leesburg, VA 20175,

      Plaintiff,

v.

PYONG HO YIM
1009 Thornwood Street
Glendale, CA 91205,

and

JOHN KIM
12860 Charlewood Street
Cerritos, CA 90703,

      Defendants.

C.A. No. 1=09 cv 108
TSE/TCB

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This is an action for breach of contract. Plaintiff Precision Franchising LLC ("Precision Franchising") seeks damages and injunctive relief against Defendants Pyong Ho Yim ("Yim") and John Kim ("Kim") (collectively "Defendants").

### THE PARTIES

1. Plaintiff Precision Franchising is a Virginia limited liability company, which is wholly owned by Precision Tune Auto Care, Inc. ("PTAC"), a Virginia corporation with its principal place of business in Virginia. At all relevant times, the principal place of business of Precision Franchising and PTAC has been in Leesburg, Virginia, which is located within Loudoun County, Virginia.

2. Defendants Yim and Kim are citizens of California.

## JURISDICTION

3. This Court has subject matter jurisdiction over the claims stated herein by virtue of 28 U.S.C. § 1332, as the matter in controversy is between citizens of different states, and exceeds the sum or value of $75,000.00, exclusive of interest and costs. Venue is proper in this District pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims against Defendants occurred in this District. In addition, Defendants have consented to this venue by prior agreement, and have also agreed to be subject to the jurisdiction of this Court.

## BACKGROUND

4. Precision Franchising is, and PTAC was, the licensor of the Precision Tune Auto Care® system. (Precision Franchising is the successor in interest to PTAC in this respect.) As such, PTAC and Precision Franchising have licensed others to operate automotive service businesses identified with the Precision Tune Auto Care® service mark and other marks and logos designated by Precision Franchising as part of the Precision Tune Auto Care® system (the "Proprietary Marks"), and to utilize confidential methods and procedures developed by PTAC and by Precision Franchising for the operation of Precision Tune Auto Care® service centers.

5. The Proprietary Marks are registered with the United States Patent and Trademark Office; and their registrations are in full force and effect. Precision Franchising has given public notice of the registrations of the Proprietary Marks as provided in 15 U.S.C. § 1111.

6. The Proprietary Marks are registered as follows:

| Mark/<br>First Use Date | Registration No./<br>Registration Date | Identification of<br>Goods/Services |
|---|---|---|
| **PRECISION TUNE**<br>February 1976 | 1,214,325<br>October 26, 1982 | Vehicle tune-up services, in Class 37. |
| **PRECISION TUNE &<br>Design**<br>December 1977 | 1,214,326<br>October 26, 1982 | Vehicle tune-up services, in Class 37. |
| **PRECISION TUNE**<br>August 1982 | 1,259,155<br>November 29, 1983 | Spark plugs, in Class 7. |
| **PRECISION TUNE**<br>February 1976 | 1,497,068<br>July 19, 1988 | Vehicle tune-up and lubrication services, in Class 37. |
| **PRECISION TUNE &<br>Design (with color)**<br>December 1977 | 1,520,139<br>January 10, 1989 | Vehicle tune-up services, in Class 37. |
| **PRECISION TUNE AUTO<br>CARE & Design**<br>August 1996 | 2,125,311<br>December 30, 1997 | Auto repair, maintenance, and lubrication services, in Class 37. |
| **PRECISION LUBE EXPRESS**<br>August 1996 | 2,239,299<br>April 13, 1999 | Vehicle oil change and lubrication services in Class 37 |
| **PRECISION TUNE AUTO CARE**<br>August 1996 | 3,015,281<br>Nov 15, 2005 | Auto and vehicle tune-up, repair and maintenance services; Repair and maintenance of automobile climate control and lighting systems, in Class 37. |
| **AMERICA'S NEIGHBORHOOD<br>AUTO CARE EXPERTS**<br>August, 2004 | 3,091,303<br>May 9, 2006 | Auto and vehicle tune-up, repair and maintenance services; Repair and maintenance of automobile climate control and lighting systems, in Class 37. |

3

7. In addition to registration of the Proprietary Marks with the United States Patent and Trademark Office, Precision Franchising has acquired common law rights with respect to the Proprietary Marks based on their use by Precision Franchising and its licensees. Precision Franchising has also acquired common law rights to trade dress that is common to Precision Franchising locations (the "Trade Dress").

8. The Proprietary Marks are inherently distinctive, as is the Trade Dress. Through over three decades of widespread use, sales, advertising, and promotion, the Proprietary Marks and Trade Dress have become famous and have earned wide renown as identifiers of quality automotive products and services, and this fame and renown have inured to the benefit of Precision Franchising's business reputation.

9. Precision Franchising has further provided trade secrets to Defendants for their use, including manuals, software and training (the "Trade Secrets"). These materials are closely guarded and protected from disclosure to third parties, and Precision Franchising requires return of such materials at the end of the franchise term.

## COUNT I
### (Breach of Contract)

10. Defendants were parties to a Franchise Agreement (the "Franchise Agreement") that required operation of a Precision Tune Auto Care® Center (the "Center") located at 5150 West Charleston Blvd., Las Vegas, NV 89146, using the Proprietary Marks, Trade Dress and Trade Secrets.

11. Defendants in fact operated the Center identified in the Franchise Agreement using the Proprietary Marks, Trade Dress and Trade Secrets at the Premises.

12. Section 4.2 required Defendants to pay Precision Franchising an operating fee of 7.5% of weekly gross sales.

4

13. Section 13.1 requires Defendants to pay Precision Franchising or its designee or to spend as directed by Precision Franchising an advertising fee of 9% of weekly gross sales.

14. Section 17.1.1 and 17.1.4 requires Defendants, upon termination of the Franchise Agreement, to cease using and return to Precision Franchising all proprietary information and Trade Secrets provided by Precision Franchising, including but not limited to software.

15. Section 17.1.5 requires Defendants, upon termination of the Franchise Agreement, to pay all sums owed to Precision Franchising.

16. Section 17.1.5 further provides that in the event that the Franchise Agreement is terminated prior to the end of its term, which is December 22, 2011, Defendants must pay lost profits calculated by multiplying (a) 7.5% by (b) the average weekly gross sales from the last 26 weeks of reported sales. Lost profits are then discounted by 20% to arrive at its present value.

17. Under section 17.2 of the Franchise Agreement, Defendants agreed to pay Precision Franchising its reasonable attorneys' fees in the event that Defendants fail to comply with the agreement.

18. Under section 26.2 of the Franchise Agreement, Defendants agreed to submit to the exclusive jurisdiction and venue of this Court.

19. Under the Soft Wrench Support Agreement, which is a part of and was executed at the same time as the Franchise Agreement, Defendants agreed to pay support fees for software support.

20. Precision Franchising and PTAC fully performed their obligations under the Franchise Agreement.

21. Despite Precision Franchising's and PTAC's performance of their obligations, Defendants have failed to abide by the terms of the Franchise Agreement.

22. Upon information and belief, Defendants have failed to return the Trade Secrets, including software belonging to Precision Franchising, which they are obligated to cease using and return to Precision Franchising upon termination of their Franchise Agreement.

23. Defendants failed to pay operating fees and advertising fees.

24. Defendants prematurely closed their Center.

25. Defendants failed to pay software support fees.

26. Precision Franchising has suffered harm of at least $99,213.00, and is entitled to an award of damages, together with pre- and post-judgment interest, attorney's fees and costs, against Defendants for the foregoing breaches of contract.

27. Precision Franchising has been substantially and irreparably harmed by Defendants' conduct, and will continue to be substantially and irreparably harmed unless said Defendants are preliminarily and permanently enjoined from continuing their breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Precision Franchising prays that the Court:

A. Preliminarily and permanently enjoin Defendants from utilizing Precision Tune's Trade Secrets and Order them to return such Trade Secrets;

B. Order Defendants to file with the Court and to serve on Precision Franchising's counsel, within fifteen (15) days after service of any preliminary or final injunction issued herein, a written report under oath setting forth in detail the manner in which Defendants have complied with the injunction, including a return of Precision Franchising's Trade Secrets;

C. Enter an award of damages;

D. Enter an award of punitive damages;

E. Enter an award of attorney's fees and costs;

F.  Enter an award for pre- and post-judgment interest; and

G.  Grant such further relief as the interests of justice may require.

_____
Gary C. Tepper
Kristine J. Dunne (VA Bar No. 45331)
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5339
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
Email: dunne.kristine@arentfox.com

Dated: February 3, 2009                Attorneys for Plaintiff Precision Franchising LLC